Filed 5/1/23  P. v. Collins CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RONALD COLLINS,<br><br>    Defendant and Appellant. | B318161<br><br>(Los Angeles County<br>Super. Ct. No. BA450794) |

APPEAL from an order of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed.

Deborah L. Hawkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Ronald Collins appeals from the trial court's summary denial of a Penal Code section 1172.6[1] petition regarding his conviction for directly aiding and abetting second degree murder, a crime the jury was instructed requires Collins to have acted with malice aforethought. He argues that, given the substance of the jury's verdict, the jury must have imputed the requisite malice to him based solely on his driving the car out of which his codefendant shot and killed the victim, a theory that renders him prima facie eligible for section 1172.6 resentencing. We disagree and affirm.

## FACTS AND PROCEEDINGS BELOW

### A.   *Trial and Conviction*

A 2017 information charged Collins, John Charles Patrick, James Hill, and Bernard Kajuan Smith with first degree murder in connection with the drive-by shooting of Demond Jones. At trial, the People prosecuted Collins as an aider and abettor on the theory that Collins intended to and did assist Patrick in committing murder by driving the car out of which Patrick shot Jones. Evidence presented at trial included the following:

Patrick and Collins were half brothers and members of gangs that shared a common enemy, the Rollin' 30's

---

[1] Subsequent unspecified statutory references are to the Penal Code.

Collins filed his petition under the predecessor to section 1172.6, which was codified as section 1170.95. Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6 (Stats. 2022, ch. 58, § 10) without changing the statute's content. We hereafter cite to section 1172.6 for ease of reference.

Neighborhood Crips (Neighborhood Crips). On the evening of October 4, 2016, Patrick, Collins, Smith, and Hill were drinking at the house of a friend, Kenyetta Loyd. Loyd allowed Patrick to drive a rented burgundy sports utility vehicle (SUV) to the store to buy alcohol. Loyd did not hear any discussion about gangs, or enemies, or going on a mission, nor did she see any of the men with a gun. She did, however, observe Patrick and Hill throwing gang hand signs during the evening. Around 2:00 a.m., Loyd told Patrick he could use the SUV to drive the other men home. Loyd gave Patrick the keys to the SUV, but she did not see the men get into the car. (*People v. Patrick et al.* (Oct. 5, 2020, B293996) [nonpub. opn.] (*Patrick et al.*).)

At 2:22 a.m. a person called 911 and reported that someone had pulled a gun on him and attacked him in an area within territory claimed by the Neighborhood Crips gang. Police officers responded to the scene and heard four to seven gunshots. One officer saw a burgundy SUV driving very slowly. After the SUV made a turn, the officer saw a man lying on the ground outside a restaurant. The man, Demond Jones, had been shot four times and died at the scene. Officers pursued the SUV, which eventually crashed, and one officer witnessed three people running from the vehicle. Police found a .38 caliber revolver on the ground outside the passenger side of the SUV with five discharged cartridge casings inside it. During trial, a criminalist opined that the revolver fired the bullets that were recovered from the victim's body. Patrick's fingerprints were found on the outside front driver's side door and on the revolver. Collins's fingerprint was found on the gas tank door/cover. (*Patrick et al.*, *supra*, B293996.)

A video surveillance recording of the incident showed an arm reaching out from the front passenger window of the SUV and firing one shot. The shooter wore a white tank top. Photographs taken near the time of Patrick's arrest show him wearing a white tank top. (*Patrick et al.*, *supra*, B293996.)

The day after the shooting, Loyd visited Smith in jail. Smith initially told Loyd he was asleep during the incident, but when Loyd pressed him, he told her "they" shot someone. Smith later told Loyd that "Little" shot someone, which Loyd understood to be a reference to Patrick. Smith said Patrick was in the front passenger seat, Collins was driving, and he and Hill were in the back seat of the SUV. (*Patrick et al.*, *supra*, B293996.)

The prosecution's theory at trial was that Jones died as a result of a drive-by shooting in rival gang territory, that Patrick was the shooter and Collins was the driver in the shooting, and that by driving the car while Patrick shot Jones, Collins intended to and did aid and abet murder. The court instructed the jury as to, inter alia, aiding and abetting, implied malice and express malice murder, and second and first degree murder. The aiding and abetting instruction the court read to the jury (CALCRIM No. 401) required, inter alia, that Collins "specifically intend[ed] to, and [did] in fact, aid, facilitate, promote, encourage, or instigate [Patrick's] commission of [murder]."

The jury convicted Patrick of first degree murder (§ 187, subd. (a)) and found true allegations that Patrick personally used and intentionally discharged a firearm causing death. The jury convicted Collins of second degree murder (§ 187, subd. (a)). (*Patrick et al.*, *supra*, B293996.)

4

### B.   *Collins's Section 1172.6 Petition for Resentencing*

Collins filed a petition for resentencing under section 1172.6, a statute initially enacted as part of Senate Bill No. 1437.  Senate Bill No. 1437 "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(f), p. 6674.)  It accomplished this by amending section 188, subdivision (a)(3), to require that all principals to murder must act with express or implied malice to be convicted of that crime, with the exception of felony murder under section 189, subdivision (e).  (Stats. 2018, ch. 1015, § 2, p. 6675.) For a felony murder conviction under section 189, subdivision (e), Senate Bill No. 1437 required that the defendant be the actual killer, an aider and abettor to the murder who acted with intent to kill, or a major participant in the underlying felony who acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 3, p. 6675.)

Section 1172.6 established a procedure for defendants already convicted of murder under the pre-Senate Bill No. 1437 version of the law to seek resentencing if they could not be convicted of that crime given the above amendments to sections 188 and 189. (Stats. 2018, ch. 1015, § 4, pp. 6675–6677.)

Senate Bill No. 775 amended section 1172.6, effective January 1, 2022.  (Sen. Bill No. 775 (2020–2021 Reg. Sess.); Stats. 2021, ch. 551, § 2, pp. 6971–6972.)  Among other changes, Senate Bill No. 775 added as an additional basis for relief under

5

section 1172.6 that the petitioner was convicted of murder based on any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a)(1); *People v. Lewis* (2021) 11 Cal.5th 952, 957, 959 (*Lewis*).)

A court receiving such a section 1172.6 petition must conduct an analysis as to whether the petitioner has made a prima facie showing of eligibility for such relief. (§ 1172.6, subd. (c); *Lewis, supra*, 11 Cal.5th at p. 960.) A petitioner convicted of murder makes such a prima facie showing when he alleges that he was convicted based on a theory of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" (§ 1172.6, subd. (a)(1); see *id.*, subd. (a)(2)), and that he "could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3); see *Lewis, supra*, at pp. 959–960.) In assessing eligibility at the prima facie stage, the court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Lewis, supra*, at p. 971.)

Here, the trial court determined Collins had not alleged prima facie eligibility under section 1172.6, because he had been convicted on a direct aider and abettor theory, which the court concluded was not a theory listed in section 1172.6. The court denied the petition and did not issue an order to show cause. Collins timely appealed.

6

## DISCUSSION

When the court denies a section 1172.6 petition based on failure to make a prima facie case for relief, we review the court's application of the law to the facts de novo. (See *People v. Drayton* (2020) 47 Cal.App.5th 965, 981, overruled in part on another ground in *Lewis, supra*, 11 Cal.5th at pp. 962–970.)

Although the prosecution may rely on acts of a perpetrator who causes a victim's death in order to convict an aider and abettor of murdering that victim, the prosecution must prove the aider and abettor personally held a specific mental state as well. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1122 (*McCoy*) ["when a person, with the mental state necessary for an aider and abettor, helps or induces another to kill, that person's guilt is determined by the combined acts of all the participants as well as that person's own mens rea"]; see also *id*. at p. 1117 ["the mental state required of an aider and abettor [is] 'different from the mental state necessary for conviction as the actual perpetrator' "].) Namely, as the jury was instructed here, the prosecution must prove that the aider and abettor defendant "intended to aid and abet the perpetrator in committing the [murder] [¶] . . . [¶] . . . [and that he] kn[ew] . . . the perpetrator's unlawful purpose and . . . specifically intend[ed] to, and [did] in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime." (CALCRIM No. 401; see *McCoy, supra*, at p. 1118 [" '[t]o prove that a defendant is an accomplice . . . the prosecution must show that the defendant acted "with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense" ' "].) "[N]otwithstanding Senate Bill No. 1437 . . . [and the further

amendments of Senate Bill No. 775], an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree [implied malice] murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life." (*People v. Gentile* (2020) 10 Cal.5th 830, 850, superseded by statute on other grounds as stated in *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 584 (*Glukhoy*); see *Glukhoy*, *supra*, at p. 588 ["aiding and abetting implied malice murder is a valid theory of liability for second degree murder"].) Consistent with this, the jury was instructed that, in order to find Collins guilty of aiding and abetting second degree implied malice murder (as it ultimately did), the jury needed to first conclude he acted with the reckless disregard for human life when he assisted Patrick by driving the car during the shooting.[2]  (See, e.g.,

_____

[2] Specifically, the court instructed the jury on aiding and abetting using CALCRIM No. 401, and on implied malice using CALCRIM No. 520. (See CALCRIM No. 401 [aiding abetting requires, inter alia, that "[b]efore or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing [the underlying] crime" and that the defendant "knows . . . the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime"]; CALCRIM No. 520 [implied malice requires, inter alia, conscious disregard for human life].)  Two Court of Appeal decisions have questioned whether these or similar instructions sufficiently explain that an aider and abettor of implied malice murder must himself act with conscious disregard for human life. (See *People v. Powell* (2021) 63 Cal.App.5th 689, 714 (*Powell*); *People v. Langi* (2022) 73 Cal.App.5th 972, 982, 984.)  Collins stresses, however, that he is not challenging the instruction provided.  In any event, we see no infirmity in CALCRIM No. 401

*Glukhoy*, *supra*, 77 Cal.App.5th at pp. 587–588 [aiding and abetting implied malice murder requires reckless disregard for human life]; *McCoy*, *supra*, 25 Cal.4th at p. 1123 ["one cannot knowingly and intentionally help another commit an unlawful killing without acting with malice"].)

Collins does not challenge the sufficiency of the jury instructions. (See *ante*, fn. 3.) Rather, he argues that, under these instructions, the jury's decision to convict Collins of aiding and abetting *second degree* murder, but to convict the actual shooter of murder in the first degree, indicates the jury must have imputed the requisite disregard to Collins in a manner no longer permissible under the law—mere participation in a crime. Collins's argument is as follows: Collins assisted Patrick by driving the car, but the prosecution did not attempt to prove, nor did the evidence establish, "that [Collins] drove that car recklessly or dangerously or in a way that risked human life." Thus, the only way Collins could have acted with reckless disregard by driving is if Collins anticipated Patrick would shoot from the car while Collins was driving. But according to Collins, "[b]ecause the jury did not find [him] guilty of first[ ]degree murder, the jury necessarily found that [Collins] did *not* anticipate the shooting." (Italics added.) Therefore,

_____

as applied to implied malice murder, because it expressly requires the defendant to have shared the unlawful criminal objective of the perpetrator and to have knowingly and intentionally assisted the perpetrator in committing murder (see CALCRIM No. 401), a crime that requires malice. (See § 187, subd. (a) [defining murder as requiring express or implied malice]; *McCoy, supra,* 25 Cal.4th at p. 1123 ["one cannot knowingly and intentionally help another commit an unlawful killing without acting with malice"].)

Collins argues, the only way the jury could have found he acted with the requisite malice was by imputing such a mental state to him based only on his participation in the crime and/or Patrick's commission of the crime, currently impermissible theories that render him prima facie eligible for relief under section 1172.6.

Collins's argument incorrectly assumes that, because the jury did not find Collins guilty of murder in the first degree (as it found Patrick), the jury necessarily must have concluded Collins did not anticipate Patrick would shoot from the car while Collins was driving. That is incorrect. Whether Collins aided and abetted murder in the first rather than the second degree does not depend on whether Collins anticipated Patrick would shoot out of the car while Collins was driving. Rather, as the court instructed the jury, the difference between first and second degree murder depends on whether "[(1)] the murder was willful, deliberate and premeditated," which requires a premeditated intent to kill, or "(2) the murder was committed by means of discharging a firearm from a vehicle," which requires "intentionally sho[oting] *at* a person who was outside the vehicle; [¶] [and] [¶] . . . intend[ing] to kill that person." (Italics added.) Thus, the jury's conclusion that the prosecution had not established Collins's murder conviction should be in the first degree indicates the jury found Collins did not know Patrick *planned to kill* by shooting out of the car and that Collins did not know Patrick would shoot out of the car *at people with an intent to kill them*. Neither finding is inconsistent with Collins knowing that Patrick intended to shoot out of the car.

Accordingly, the substance of the verdict does not, as Collins argues, reflect that the jury imputed malice to Collins on some basis no longer permissible under current law, as opposed

10

to finding, based on the circumstantial evidence reflected in the record of conviction, that Collins "personally harbored" (*Powell*, *supra*, 63 Cal.App.5th at p. 713) reckless disregard for human life and thus the requisite intent for directly aiding and abetting implied malice murder.[3]  Nor does Collins identify any other reason why the jury's verdict should be interpreted as being based on improperly imputed malice.  Therefore, the court correctly denied Collins's section 1172.6 petition.

---

[3] The sufficiency of the evidence to support the conscious disregard for human life, or any other element of the crime charged, is not the proper basis for a section 1172.6 petition, and Collins raises no such argument. (See *People v. Farfan* (2021) 71 Cal.App.5th 942, 947 [such a petition "does not afford the petitioner a new opportunity to . . . attack the sufficiency of the evidence supporting the jury's findings"]; *People v. Allison* (2020) 55 Cal.App.5th 449, 461 ["[n]othing in the language of section [1172.6] suggests it was intended to provide redress for allegedly erroneous prior factfinding"], abrogated by *People v. Strong* (2022) 13 Cal.5th 698, 718–720 [limiting this portion of the holding in *Allison* to factfinding that occurred after *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 clarified the terms "major participant" and "with reckless indifference to human life"].)

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


BENDIX, J.